THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GIOVANNI ALDUINO, Defendant-Appellant.

Second District    No. 2—92—1316

Opinion filed April 19, 1994.

Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and John M. Carey, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Giovanni Alduino, was convicted of aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(1) (now codified, as amended, at 720 ILCS 5/12—4(b)(1) (West 1992))) and sentenced to 90 days in the county jail and 24 months' probation. He appeals, contending that he was deprived of a fair trial because the State improperly withheld exculpatory evidence in violation of Supreme Court Rule 412(c) (134 Ill. 2d R. 412(c)), and the State failed to prove him guilty beyond a reasonable doubt. We affirm the trial court's judgment.

At trial, Antonella Pulice testified that on November 20, 1989, the Wood Dale police asked her to come to the police department and translate for them. Pulice agreed to do so, and at the police station she read *Miranda* rights to defendant in Italian. After defendant indicated that he understood the rights, the police directed her to ask defendant specific questions in Italian. In response to her questions, defendant stated that, "it started in the...with the cars, they were driving along, whatever, and then a few words were exchanged." Defendant also stated that he went to a restaurant with a bat.

Luciano Migliaccio, the victim, testified that on November 20, 1989, he was working at a restaurant called Giorgio's Restaurant in Wood Dale. His employer sent him across the street to buy produce for the restaurant. After Migliaccio parked his car, someone blocked him by parking his car behind Migliaccio's car. An argument ensued between Migliaccio and the man driving the other car. Migliaccio then returned to work, which was just a few minutes away. Migliac-

cio was working in the kitchen when his manager called him and told him that two men wanted to talk to him. Migliaccio saw the man he had argued with and he saw defendant. Defendant had a jacket over a baseball bat, and he took out the baseball bat and hit Migliaccio on the head several times. Migliaccio lost consciousness. Migliaccio required 10 stitches to close the wound on his head, and he suffered pain for about one week. At the time he was struck, he was looking at the defendant face-to-face. The bat was less than two feet long and made of metal.

Curt Shires, an emergency medical technician, received a dispatch message of a fight in progress at Giorgio's. As he entered the parking lot of the restaurant, he saw two individuals hastily getting into a vehicle and he saw the vehicle pull out very quickly, going eastbound. Shires entered the building. He saw Luciano Migliaccio sitting in a chair. There was blood on the floor and on Migliaccio's head.

Anthony Latronica was in the lobby of Giorgio's restaurant on November 20, 1989, talking with John and Jerry DiNunzio. John was the owner of the restaurant and Jerry was the head chef. Two men entered the building and asked who owned a certain car in the parking lot. The two men were small in stature and one, identified by Latronica as defendant, had a coat. One of the DiNunzios went into the kitchen and brought out Luciano Migliaccio, who was dressed in a chef's coat. As the men approached each other the conversation became more heated, and defendant took the bat from under his coat and hit Migliaccio on the head several times. Latronica went to call the police while the DiNunzios restrained the men. Latronica came back, picked up the bat, and placed it in the foyer. Latronica stated that the bat was aluminum and appeared to be less than full size. According to Latronica, defendant fled, but the DiNunzios detained the other person and turned him over to the police.

Later that day, the police brought defendant to the parking lot and asked Latronica if defendant was the man who hit Migliaccio. Latronica identified defendant as the man. Latronica stated that defendant and the man with him looked somewhat alike and were approximately the same size, although defendant was taller. Despite the fact that Latronica stated that he would have a hard time naming a distinguishing feature between defendant and his companion, he did state that he thought defendant was slightly bigger than his companion. He added, "But I remember who had the bat; that I do remember." He then identified defendant as that man. He also stated that defendant talked more and defendant's companion seemed more timid. Latronica stated that he immediately recognized defendant in

court as being the man that had the bat and that he (Latronica) had identified on November 20, 1989.

Officer Dean Costopoulos received a dispatch that another officer was following a suspect. Costopoulos effected a traffic stop and asked defendant to exit his vehicle and place his hands on his trunk. Officer Costopoulos noted that there were fresh bloodstains on the trunk and blood on defendant's hands. He placed defendant under arrest and brought him back to Giorgio's.

Defendant called Joseph Palazzolo, defendant's brother-in-law, who testified that a few days after the incident police arrested him and took him to the police station. They showed Palazzolo a photographic array of 10 pictures and told him Migliaccio had identified him as a participant in the fight. Palazzolo's picture was in the array, but Palazzolo did not recognize anyone else pictured in the array, including defendant or defendant's brother. Palazzolo was placed in front of a window and told that someone was being asked to identify him. A police officer later told him that he had not been identified and he was free to go.

The other evidence of identification procedures came through the testimony of Migliaccio, who stated that he was shown about 20 pictures, but did not identify anyone. He was also asked to view a lineup at the police station a week or two after the incident, but again he did not identify anyone. Defense counsel stated that he had not received any notice that a photographic or physical lineup had been held. The assistant State's Attorney stated that he had no knowledge of either event, but he would check further. Defendant urged that the trial court find a discovery violation as a result of the State's failure to inform defendant of the photographic array and the lineup.

The court conducted a hearing into the alleged discovery violation. The State brought in several witnesses to testify. They included Officer Dean Costopoulos, who testified that to the best of his knowledge no one in his department of the Wood Dale police ever showed a photographic lineup to Migliaccio. Other than the showup at the restaurant, defendant was not displayed to any witness for identification purposes.

Terrance Scott Baney, also a police officer with the City of Wood Dale, testified that he never conducted a lineup procedure and never displayed photographs to witnesses in the instant case.

Robert Del Carlo testified that he was a detective with the City of Wood Dale and he had assisted in the investigation of this matter. He showed a photographic lineup to John DiNunzio and to Luciano Migliaccio. The lineup included a photo of Joseph Palazzolo which

was 10 to 12 years old and five other photographs. None of the pictures was of defendant. The lineup was conducted in an attempt to identify the second man involved in the incident because defendant had already been identified and arrested. DiNunzio identified Palazzolo, but Migliaccio could not identify anyone from the photographic array. As a result of the identification, Del Carlo placed Palazzolo under arrest. At the police station, Del Carlo placed Palazzolo behind a one-way mirror and asked DiNunzio and Migliaccio to view him. Neither man could identify Palazzolo, so Palazzolo was released. At no time did Officer Del Carlo show a photograph of defendant to any witness for identification.

Frank Biniewicz, a detective for the Wood Dale police department, was present for the photographic array displayed by Officer Del Carlo and the lineup. He also stated that the array did not contain a picture of defendant. He corroborated Del Carlo's testimony that only DiNunzio picked Palazollo from the photographic array and neither DiNunzio nor Migliaccio picked Palazollo from the lineup. Biniewicz testified that the photographs used in the array were destroyed because once the two witnesses failed to identify Palazzolo, the case against Palazzolo was dropped and the records were destroyed.

Following the hearing on the alleged discovery violation, defendant moved for a mistrial. The trial court denied defendant's motion.

■ Defendant's first issue on appeal is whether the trial court erred in not granting a mistrial where the State failed to disclose that two of the witnesses in this case had been shown a photographic array and a lineup and had not identified anyone. Defendant's argument is that without being able to review the pictures shown to Migliaccio and DiNunzio there is no way to determine whether the evidence was favorable to defendant and therefore the State's withholding of such information must be considered to be prejudicial and a due process violation.

The suppression by the prosecution of requested evidence favorable to an accused violates due process where the evidence is material either to the guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97.) While the *Brady* rule generally involves discovery of information after trial which was known to the prosecutor and should have been disclosed to the defense, even the late disclosure of *Brady* material in the midst of trial may give rise to a violation of due process. (*People v. Bivens* (1981), 97 Ill. App. 3d 386, 391.) In *United States v. Bagley* (1985), 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383), the Supreme Court held that "the evidence is material only if there

is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." In evaluating whether omitted evidence is material, the omission must be evaluated in the context of the entire record. *United States v. Agurs* (1976), 427 U.S. 97, 112, 49 L. Ed. 2d 342, 355, 96 S. Ct. 2392, 2402.

Through Supreme Court Rule 412(c), the discovery rules specifically provide for the pretrial disclosure of *Brady* evidence. The rule provides in part that the State shall, upon written motion of defense counsel, disclose to defense counsel "any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (134 Ill. 2d R. 412(c).) The trial court may impose sanctions for the violation of a discovery rule. (134 Ill. 2d R. 415(g).) However, declaring a mistrial is a drastic sanction (*People v. Sosa* (1990), 195 Ill. App. 3d 828, 834), and a new trial is not warranted unless the requested materials were "material" in a constitutional sense (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 255). The correct sanction to be applied is left to the trial court's discretion, and the judgment of the trial judge is to be accorded great weight. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135.) Among the factors to be considered in determining whether a new trial is warranted are the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice would have helped defendant discredit the evidence. *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 437, citing *People v. Cisewski* (1987), 118 Ill. 2d 163, 172.

The record does not disclose a specific request for the information now at issue, but the court ordered the prosecution to disclose information required in Supreme Court Rule 412(a) (134 Ill. 2d R. 412(a)). In its disclosure, the State responded that it did not have any information tending to negate the guilt of the defendant.

We have carefully reviewed the evidence in this case and have evaluated the omission in the context of the entire record. We conclude that the omitted evidence was not material in a constitutional sense.

Defendant urges this court to find that the testimony by the police who conducted the photographic and physical lineup was unreliable because it was never supported by police reports regarding the identification procedures and because the photographs in the array shown to Migliaccio and DiNunzio were not produced. Defendant points out that if the photographs included a picture of defen-

dant, the witnesses' failure to identify the picture was exculpatory information. Defendant argues that the trial court never specifically found that defendant's picture was not displayed to the witnesses.

A trial judge is presumed to have understood and properly applied the law. (*People v. Baum* (1991), 219 Ill. App. 3d 199, 201.) In this case, the trial judge specifically stated that if the photographic array contained a picture of defendant, the witnesses' failure to identify defendant as one of the men involved in the incident was exculpatory information. After holding a hearing on the discovery issue, the trial court denied defendant's motion for a mistrial. Obviously, the trial court found the police officers to be credible in their assertions that the photographic array did not contain defendant's picture and defendant was not in the physical lineup. In fact, not only did Officers Biniewicz and Del Carlo testify consistently regarding this fact, but Joseph Palazzolo stated that he did not see defendant pictured in the photographic array which contained Palazzolo's picture. It is for the trier of fact to determine the credibility of the witnesses. *People v. Spann* (1992), 237 Ill. App. 3d 705, 712.

Defendant argues that since this case involved a question of identification the police reports stating who were the subjects involved in the identification procedures must be considered favorable to defendant. Defendant cites the case of *People v. Nichols* (1976), 63 Ill. 2d 443, in support of this proposition. *Nichols* does not state that any omission in evidence of identification must be considered to be favorable. Rather, in *Nichols*, the suppression of a shoe found outside of a window where at least one of the intruders was believed to have entered was held to be material because the prosecution admitted it did not belong to defendant and a palm print outside of the window did not match that of defendant or any of the victims. *Nichols*, 63 Ill. 2d at 448.

The facts in the instant case do not involve the witnesses' failure to identify defendant from a lineup or photographic display. Rather, the omitted disclosure in this case is that the victim and another witness failed to identify anyone as the defendant's companion from a photographic display which did not include defendant's picture and a physical lineup which did not include defendant. We fail to see how this is exculpatory information which, if disclosed, would have resulted in a reasonable probability that the result of the proceeding would have been different. The photographic array in this case and the physical lineup were utilized in an effort by police to identify the man who accompanied defendant to the restaurant where Migliaccio was wounded. The lack of an identification of any of the men shown in the array does not reflect adversely on their identification of de-

fendant because defendant's photograph and person were not involved in the identification procedures.

We conclude that the omission of this information in the State's disclosure was not material in a constitutional sense, and therefore defendant is not entitled to a new trial.

■ Defendant's second contention of error is that the State did not prove him guilty beyond a reasonable doubt. We disagree.

The standard of review on questions of the sufficiency of the evidence is well settled. The question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) In this case, defendant argues, without elaboration, that the victim, Luciano Migliaccio, did not have sufficient opportunity to view the man who hit him. There is no indication of how much time elapsed before defendant hit the victim, but the evidence shows that the victim exchanged words with defendant and one other man and that the victim was face-to-face with defendant when the victim was hit. The victim's in-court identification of defendant as the man who hit him was unequivocal.

The other man who identified defendant, Anthony Latronica, stated that defendant and his companion looked similar, but there was a difference in height and in the manner of the two men. Latronica stated that defendant was the taller of the two men and defendant's companion exhibited a more timid manner. Latronica stated that while the men were similar in appearance, there was no question that defendant was the man who wielded the bat. Admittedly, Latronica's testimony that defendant's companion was held at the scene was disputed by the police officers' testimony. However, this discrepancy was not sufficient to destroy Latronica's credible identification of defendant.

The identification evidence, in conjunction with evidence that defendant had blood on his hands when stopped after the incident and had made a post-arrest statement to an interpreter that he had taken a bat to the restaurant, was sufficient to prove defendant guilty beyond a reasonable doubt.

We affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and DOYLE, JJ., concur.