2020 IL App (2d) 190285-U
No. 2-19-0285
Order filed June 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-152 |
| MICHAEL MARTINEZ, | ) ) | Honorable Donald J. Tegeler, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court did not abuse its discretion in admitting the section 115-10 statements at trial.  Also, the evidence was sufficient to convict, and the indictment and the report of proceedings were sufficient to protect defendant against double jeopardy.  Affirmed.

¶ 2  Following a bench trial, the court found defendant, Michael Martinez, guilty of predatory criminal sexual assault of a child under age 13 (725 ILCS 5/11-1.40(a)(1) (West 2014)) and sentenced him to nine years and six months in prison.  While the court could not find sufficient evidence of anal penetration, it found that, at a minimum, defendant, then age 26, touched his penis against the buttocks of G.E., then age 8, for the purpose of sexual gratification.  G.E. spoke of the

incident with her mother, Rita Gariti, and an investigator at the Kane County Child Advocacy Center, David Berg. After conducting two separate hearings pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2014)), the trial court ruled that Gariti and Berg could testify to some, but not all, of G.E.'s statements to them.

¶ 3     On appeal, defendant argues that the trial court erred in admitting the section 115-10 statements, because the statements were inconsistent with one another and, therefore, were not sufficiently reliable. For example, G.E. told Gariti that the abuse occurred on multiple occasions, but G.E. told Berg that the abuse happened once. G.E. told Gariti that defendant hurt her physically, but G.E. told Berg that defendant did not hurt her physically. We reject defendant's argument, because the alleged inconsistencies did not become apparent until the second section 115-10 hearing, and the transcripts from the second section 115-10 hearing are not included in the appellate record. Therefore, pursuant to *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984), we must presume that the court properly addressed these inconsistencies, if they were even raised at that time. In any case, these inconsistencies were addressed at trial, and they were part of the reason that defendant was acquitted of the charge alleging anal penetration.

¶ 4     Separately, defendant argues that the evidence was insufficient to convict, because G.E.'s testimony and out-of-court statements contained inconsistencies and because the State did not prove that defendant acted for the purpose of sexual gratification. Defendant also argues that the indictment was insufficient to protect him from being tried again for the same conduct. We reject defendant's arguments and affirm.

¶ 5                               I. BACKGROUND

¶ 6     This case involves a 2014 sexual abuse incident between defendant and G.E. As an overview, defendant, who was the boyfriend of G.E.'s paternal aunt, lived in the home of G.E.'s

paternal grandparents. Every Saturday afternoon, when her parents worked, G.E. and her brother, then age 2, went to her grandparents' home. On at least one of those Saturdays, defendant asked G.E. to come to his bedroom, which was located upstairs, and he proceeded to abuse her. A female cousin, M.B., then age 3, was also in the room. G.E. later told her mother of the abuse. Her mother filed a police report, prompting G.E.'s interview with Berg.

¶ 7    In June 2016, the State charged defendant by way of a four-count indictment. Count I alleged predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)), in that defendant committed an act of contact, however slight, between his penis and the victim's buttocks, for the purpose of sexual gratification. Count II also alleged predatory criminal sexual assault of a child, but pleaded that defendant committed the act of anal penetration. Count III alleged aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2014)), in that defendant knowingly committed an act of sexual conduct with a child under age 13 when he placed his penis on her buttocks. Count IV also alleged aggravated criminal sexual abuse, but pleaded that defendant placed his mouth on the victim's buttocks. All counts alleged that the conduct occurred between April 1, 2014, and June 12, 2014.

¶ 8                              A. Section 115-10 Hearings

¶ 9    Prior to trial, the court conducted two section 115-10 hearings. First, on February 23, 2018, the court conducted a hearing to determine whether G.E.'s out-of-court statements to Berg would be admissible at trial. Berg would testify to his video-taped interview with G.E. Defendant did not object to the admission of the video. However, he objected to the admission of illustrative exhibits and corresponding portions of Berg's testimony. Specifically, the State sought to admit the black-and-white anatomical drawings that Berg had used during the interview. During the interview, Berg used the drawings to clarify G.E.'s statements. He asked her to draw a circle

around the male figure's "period," which was the term she used for a penis. He also asked her to draw an "x" on the female figure where defendant had placed his penis. The "x" was placed over the crack of the figure's buttocks. Berg would testify that the drawings were the same ones that he had used in the interview and that the drawings bore the markings that G.E. made during the interview. Defendant argued that the drawings were prejudicial, because they depicted naked persons, and it was unclear whether defendant had made skin-to-skin contact. The State disagreed, arguing that the drawings merely helped to clarify to which anatomical parts G.E. referred. The court noted that, generally, it found sufficient indicia of reliability to allow Berg to testify at trial as to his interview with G.E. The court observed that Berg did not ask G.E. leading questions, and it did not believe G.E. had a reason to make false accusations. However, the court would reserve the question of whether the drawings would be admitted at trial.

¶ 10      Second, on April 16, 2018, the court conducted a hearing to determine whether G.E.'s out-of-court statements to Gariti would be admissible at trial. The transcripts from that hearing are absent from the record. In a written order, the court admitted some of G.E.'s statements to Gariti but excluded others. Admitted statements included those pertaining to defendant's alleged abuse of G.E., such as pulling down her pants and touching her buttocks. Excluded statements included those pertaining to defendant's alleged acts of oral sex on both G.E. *and M.B.*, an incident wherein defendant allegedly blindfolded both G.E. and M.B. and put dog biscuits in their mouths, promises made by defendant to G.E., and M.B.'s statements to G.E. However, G.E. herself would be able to testify to the alleged acts of oral sex and blindfolding.

¶ 11                                      B. Trial

¶ 12     On December 17, 2018, the trial court conducted the bench trial.  The only witnesses to testify to the alleged abuse were G.E., Berg, and Gariti.  We begin with Berg.

¶ 13                                              1. Berg

¶ 14     Berg testified that he has conducted "thousands" of child interviews.  He worked with children from 1976, when he began working as a youth corrections officer, until 2015, when he retired.  He spent the last 22 years of his career as an investigator for the Child Advocacy Center.  He has attended numerous training seminars on how to interview children.  He finds that the key is not to suggest any answers.  He also uses anatomical drawings to make sure that he understands the terminology that the child uses.

¶ 15     The State played Berg's video-taped interview with G.E., and defendant did not object.  In the interview, Berg asked G.E. a series of questions about defendant, such as defendant's relationship to the family and where defendant lived.  When Berg asked G.E. if there was anything else she wanted to tell him about defendant, G.E. said, "He put his period in my butt," and "He keeps on rubbing me and [M.B.'s] butt and we told him to stop and he wouldn't stop."  According to G.E., defendant did not say anything during the abusive act.  The abuse occurred "probably" one month prior to the interview.  Defendant asked G.E. to go upstairs to his room to play "Walking Dead."  She liked "some of that stuff," so she went to his room.  M.B. was in the room, too.  "[M.B.]'s always with me."  Later, on a different day, G.E.'s father asked G.E. whether defendant had abused her, and G.E. told him no.  Later that evening, G.E. told her mother that defendant *had* abused her.  G.E. explained, "I don't [inaudible] telling my dad.  I like telling my mom."

¶ 16     As to whether defendant touched G.E. *on her skin*, G.E. answered:

         "G.E.: Oh, I forgot to tell you.  He kisses me and [M.B.'s] butt.  I didn't know at
    first what was happening, but then I was embarrassed.

BERG: You say he kisses your butt?

G.E.: Yeah.

BERG: Does he kiss your butt on your clothes or on your skin?

G.E.: Skin.

BERG: What, how does he do, how is he able to kiss you on your skin?

G.E.: So we lay down and watch like T.V., right, and he goes behind us and then he pulls down our pants and undresses us.

BERG: I'm sorry you had your hands up I can't hear you.

G.E.: Um, we watch T.V.

BERG: Okay.

G.E.: And, like, he goes behind us, and then he kisses our butts.

BERG: What about, what happens to your clothes?

G.E.: Nothing.

BERG: How does he—you said he kisses you on your skin.

G.E.: Yeah.

BERG: Well, if you, do you have clothes on?

G.E.: Yeah.

BERG: If you have clothes on, how—

G.E.: He pulls down my pants.

BERG: He pulls them down, okay, okay. And, under your pants, are you wearing anything else?

G.E.: Yeah.

BERG: What else?

G.E.: Underwear.

BERG: Does anything happen with the underwear?

G.E.: No.

BERG: Um. Okay, and then you say he put his period in your butt?

G.E.: Yeah.

BERG: Did you have clothes on or off when that happened?

G.E.: Clothes on.

BERG: On?

[G.E. nods yes.]

BERG: And, did anything happen to your clothes at all?

G.E.: No.

BERG: Did his period touch your butt on your skin or on your clothes?

G.E.: Skin.

BERG: On the skin. And yet how could he touch your butt on your skin if you had clothes on?

G.E.: Same reason.

BERG: Which was?

G.E.: Like, we were watching T.V…. [voice trails off]."

BERG: Okay. And you said the same reason?

G.E.: Yeah.

BERG: Before you said that he pulled your pants down?

G.E.: Yeah, yeah, he pulled my…[voice trails off]."

¶ 17    As to whether defendant touched G.E. *more than one time*, G.E. answered:

> "BERG: How many times has he touched your butt *with his period*?
>
> G.E.: Once.
>
> BERG: One time?
>
> [G.E. grunts affirmatively]." (Emphasis added)

And,

> "BERG: How many times has he *kissed* your butt?
>
> G.E.: Once.
>
> BERG: Once. Was it the same day that he touched your butt with his period or was it a different day?
>
> G.E.: Different.
>
> BERG: Different day?
>
> [G.E. nods yes.]" (Emphasis added.)

¶ 18    As to whether defendant caused her *physical pain*, G.E. answered:

> "BERG: So, you said [defendant] put his period in your butt?
>
> G.E.: Yeah. Just my butt, that's it.
>
> BERG: Okay, what did it feel like?
>
> G.E.: Didn't hurt.
>
> BERG: Didn't hurt?
>
> [G.E. grunts in the negative]."

¶ 19    Finally, G.E. stated that defendant did not touch her anywhere *other* than her buttocks: "Now, did his period touch you anywhere else? No;" "Is there any place else on your body that he touched? No;" and "On the front part of the body, was there anything that was touched? No."

¶ 20　After the video played, and over defendant's objection, Berg explained the markings that G.E. had made on the anatomical drawings during the interview.

¶ 21　During cross-examination, Berg recalled Gariti telling him that she waited two weeks to file the police report.

¶ 22　　　　　　　　　　　　　　　2. Gariti

¶ 23　Gariti testified that her mother-in-law watched G.E. every Saturday afternoon. Gariti knew defendant lived in the house, but she had no animosity toward him. She only knew him to say "hi and bye." Gariti learned of the possible abuse after talking to her husband. G.E., who had been sitting in the living room with them, heard their conversation, and her demeanor changed. "She was shaking, just hiding her face between the blanket, just very distressed, just not herself. She looked like she was overwhelmed." After witnessing G.E.'s change in demeanor, Gariti asked, "Are you okay? What's going on?" G.E. answered, "[Defendant] has been touching me, too, and it hurts, and I want him to stop, and I am scared." Specifically, G.E. told Gariti that defendant put his "period in her butt." Gariti understood "period" to mean penis. G.E. told her mother that defendant pulled down her underwear. The abuse occurred in defendant's room, and M.B. was in the room when it happened. The State also asked:

　　　　　"[STATE]: Did she talk about it happening just one time or more than one time? Or did you even ask her that?"

　　　　　[GARITI]: It happened more than one time. She told me that."

¶ 24　G.E. also told Gariti that, during an episode of abuse, her brother walked in the room. Defendant pulled up his underwear and pants. G.E. pulled up her underwear and pants, and she took her brother downstairs. G.E. did not immediately tell an adult what had happened, because

"[s]he said she was scared, and she just didn't understand what was going on." Gariti filed a police report the morning after G.E. told her of the abuse. G.E. then spoke to Berg within days of that.

¶ 25    During cross-examination, Gariti could not say whether she would be surprised to learn that G.E. told Berg the abuse happened just once. She only knew that G.E. told her that the abuse happened more than once. Also, she could not say whether she would be surprised to learn that G.E. testified at trial earlier that day that defendant put just a dog biscuit in her mouth, not his penis. She only knew that G.E. told her that defendant devised a "guessing game" wherein he blindfolded G.E., first putting a dog biscuit in her mouth and then putting his penis in her mouth.[1] Gariti disagreed with Berg's statement that she waited two weeks before reporting the incident to the police.

¶ 26                                    3. G.E.

¶ 27    G.E. testified that her grandmother babysat her on Saturdays. Usually, she stayed downstairs. However, defendant invited her to his room. M.B. was there, too. Defendant pulled down G.E.'s pants *and underwear* and "put his penis in [her] butt." This happened more than once. G.E. did not tell her mother or another adult right away, because she was scared. One time, her brother walked in the room. The State also asked:

> "[STATE]: Besides putting his penis in your butt, did he do anything else to your butt?
>
> [G.E.]: I don't think so."

And,

---

[1] The court had initially excluded these statements, but defendant opened the door when questioning Gariti and also during G.E.'s testimony.

"[STATE]: Did defendant ever touch any other part of your body?

[G.E.]: He kind of touched me by my boob."

¶ 28 During cross-examination, G.E. testified that she spoke with her mother and the assistant State's Attorneys before testifying, but they did not tell her what to say. Her mother told her to tell the truth. Also, the attorneys allowed her to review her own statement to Berg by watching the video. As to whether defendant touched G.E. *on her skin*, counsel asked:

"[DEFENSE]: [During the video interview], you said 'nothing happened with my underwear.' Do you remember that?

[G.E.]: No.

[DEFENSE]: You don't? If I showed you the video, would you remember? Would that jog your memory?

[G.E.]: Maybe.

[DEFENSE]: [plays video] He asked you what happens with your clothes, and you said 'nothing.'

[G.E.]: Yes. But if you keep on playing it, I say more.

[DEFENSE]: [plays video] Okay. He just asked you if you had clothes on, and you said 'yes;' correct?

[G.E.]: Yes. But he asked if [*sic*] on the skin, and I said 'yes.'

[DEFENSE]: Okay. But you saw where he asked if you were wearing clothes, and you said 'yes?'

[G.E.]: Yes. Maybe I got confused for the question."

¶ 29 As to whether defendant touched G.E. *more than one time*, counsel asked:

"[DEFENSE]: And you told [Berg] that [defendant's] period touched your butt one time?

[G.E.]: Yes, I did.

[DEFENSE]: And today, four years later, you are saying it happened many times?

[G.E.]: Yes.

[DEFENSE]: Did you ever tell [Berg] that it happened many times?

[G.E.]: No, but I told my mom."

On redirect, G.E. explained that she felt more comfortable talking to her mom than to Berg, "because like she is my mom." G.E. also told Julie Pohlman, who worked at the Child Advocacy Center, that it happened more than once.

¶ 30    As to whether defendant *caused physical pain*, counsel asked:

"[DEFENSE]: And you told [Berg] whatever [defendant] did to you it didn't hurt; right?

[G.E.]: I think, yes.

[DEFENSE]:  Did [defendant] ever hurt you?

[G.E.]: Yes.  Yeah."

However, defendant did not cause G.E. to bleed or have trouble going to the bathroom.  On redirect, G.E. explained that defendant hurt her "like sexually wise."   Also on redirect, the State asked G.E. what she meant by the phrase "*in* her butt":

"[STATE]: Well you have a part of your butt where poop comes out.  You know that, right?

[G.E.]: Yeah.

[STATE]: Was it that part?

[G.E.]: I don't think so."

¶ 31                            C. Trial Court Findings

¶ 32    The trial court found defendant guilty of counts I and III, predatory criminal sexual assault of a child (penis-to-buttocks contact) and aggravated criminal abuse of a child (sexual conduct based on penis-to-buttocks contact). As to count I, it explained:

    "[Aside from the section 115-10 witnesses], [t]here is one witness who testified as to the events that occurred. There is no question that there are some issues with that witness, that being G.E. ***.

    G.E. testified that this [penis-to-buttocks contact] happened on at least one occasion. There is some question as to whether or not it happened on several occasions based on the testimony I have heard. There is no question she testified it happened on one occasion.

    There is no question in this court's mind and I find beyond a reasonable doubt that the incident occurred between the penis of the defendant and the buttocks area of the minor."

¶ 33    As to count III, the court stated:

    "Count III mirrors count I, except for that alleges sexual conduct, not contact. I agree with the State that, since I found there was contact, I also find in this case that there was conduct. *** I can't think of any other reason why an adult male would place his penis on the buttocks of a minor [eight] years old except for his sexual arousal."

The court determined that count III would merge into count I.

¶ 34    As to count II, predatory criminal sexual assault of a child (anal penetration), the court found defendant not guilty. It explained: "It is my finding that the contact was *on the skin* but did

not penetrate anything." (Emphasis added.) As to count IV, aggravated criminal sexual abuse (mouth-to-buttocks contact), the court found defendant not guilty. It explained that the only evidence supporting the charge came from the section 115-10 testimony, when G.E. told Berg that defendant kissed her buttocks. G.E. did not testify to the occurrence, so the court could not find defendant guilty beyond a reasonable doubt. Defendant filed an unsuccessful posttrial motion, raising the same arguments he now raises on appeal.

¶ 35                              II. ANALYSIS

¶ 36    On appeal, defendant argues that: (1) the trial court erred in admitting the section 115-10 statements; (2) the evidence was insufficient to convict, because G.E. gave inconsistent statements and because the State failed to prove the element of sexual gratification; and (3) the indictment was insufficient to act as a bar against a future prosecution arising out of the same conduct. For the reasons that follow, we reject each of defendant's arguments.

¶ 37                           A. Section 115-10

¶ 38    Defendant argues that the trial court erred in admitting the section 115-10 statements. Section 115-10 sets forth the following exception to the rule against hearsay statements:

> "(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under
> the age of 13, *** including, but not limited to, prosecutions for violations of Sections 11-
> 1.20 through 11-1.60 *** of the [Code] *** the following evidence shall be admitted as an
> exception to the hearsay rule:
>
>> (1) testimony by the victim of an out of court statement made by the victim that he
>> or she complained of such act to another; and
>>
>> (2) testimony of an out of court statement made by the victim describing any
>> complaint of such act or matter or detail pertaining to any act which is an element

of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child or person with an intellectual disability, a cognitive impairment, or developmental disability either:

(A) testifies at the proceeding; ***"  (725 ILCS 5/115-10(a), (b) (West 2014)).

¶ 39    The State bears the burden to prove that the time, content, and circumstances of the statements provide sufficient safeguards of reliability. *People v. Zwart*, 151 Ill. 2d 37, 43 (1992). The trial court's decision to admit evidence under section 115-10 will not be reversed absent an abuse of discretion. *People v. Williams*, 193 Ill. 2d 306, 343 (2000). An abuse of discretion occurs when the determination is arbitrary, fanciful, or unreasonable. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 40    Defendant argues that the trial court abused its discretion in admitting G.E.'s statements to Berg and Gariti, because the statements were inconsistent with one another. If the statements were inconsistent with one another, defendant urges, then neither statement contains sufficient safeguards of reliability. Specifically, defendant points to three inconsistencies, those being whether the contact: (1) involved G.E.'s bare skin; (2) occurred more than once; and (3) caused physical pain. We agree with defendant that the relative consistency of a child's out-of-court statements speaks to the reliability of those statements. See *Zwart*, 151 Ill. 2d at 44 (when a child

makes consistent out-of-court statements to two different adults, the content of those statements is deemed more reliable).

¶ 41    Defendant's argument fails, however, because it is not adequately supported by the record. It is the appellant's burden to prepare and submit the record to the reviewing court. *People v. Hughes*, 229 Ill. App. 3d 469, 474 (1992). Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 391-92. As such, in absence of evidence to the contrary, we presume that the trial judge understood and properly applied the law. *People v. Alduino*, 260 Ill. App. 3d 665, 671 (1994).

¶ 42    Defendant's argument hinges on a comparison between the statements that G.E. made to Berg (as aired at the February 23, 2018, section 115-10 hearing) and those that she made to Gariti (as aired at the April 16, 2018, section 115-10 hearing). Any inconsistencies between the two statements would not have become apparent until the second section 115-10 hearing. However, the transcripts from that hearing are absent from the record. Therefore, we cannot be certain that defendant did not already raise, and the court did not already address, these inconsistencies. Alternatively, it is possible that defendant did *not* raise this issue below and, therefore, would have forfeited it. We do know, from the court's written order, that it chose to admit only portions of G.E.'s statements to Gariti. The court, therefore, acted in a discerning manner when deciding to admit the statements, and, in absence of evidence to the contrary, we must presume that it understood the law and made the correct ruling.

¶ 43    In any case, from the record that we do have, we are not troubled by the ruling. The inconsistencies noted by defendant are not so extreme as defendant would have this court believe. First, inconsistencies regarding contact to the skin need not have precluded admission. When Berg asked G.E. clearly and directly whether the contact occurred over clothes or on the skin, G.E.

answered "skin." When Berg asked open-ended, ambiguous questions, such as "did anything happen to your clothes?," G.E. answered "no." We understand that Berg was trying to avoid leading questions. Still, it is unlikely that an eight-year-old child would understand the aim of the question. (Also, as we will discuss, G.E. later explained at trial her reason for answering as she did.) Second, inconsistencies regarding frequency need not have precluded admission. While G.E. told Berg that defendant put his penis in her buttocks just once, she did tell him that, on a different day, defendant kissed her buttocks. Thus, G.E. consistently maintained that the abuse was not a one-time occurrence. Third, inconsistencies regarding physical pain need not have precluded admission. G.E. told Berg that the penis-to-buttocks contact did not hurt. Both parties seem to agree that G.E. meant no physical pain. G.E. told Gariti, in contrast, that the contact did hurt. Admittedly, this is a legitimate inconsistency. Still, the court looks only to see whether there are *sufficient* safeguards of reliability. This inconsistency, weighed against other positive indicia of reliability, was not enough to preclude admission. The court was able to explore the statement at trial, where the question of physical pain most directly informed the anal-penetration charge. The court acquitted defendant of that charge. In sum, in the context of a bench trial, where the trial court merely sought sufficient indicia of reliability for purposes of admission yet ultimately discredited the statement that was most damaging to defendant, we see no sign of error.

¶ 44                      B. Sufficiency of the Evidence

¶ 45      Defendant next argues that the evidence was insufficient to convict defendant of predatory criminal sexual assault of a child. The Code defines the offense of predatory criminal sexual assault of a child as follows:

> "A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ

or anus of one person and the part of the body of another *for the purpose of sexual gratification or arousal* of the victim or the accused, or an act of sexual penetration, and *** the victim is under 13 years of age." (Emphasis added.) 720 ILCS 5/11-1.40(a)(1) (West 2014).

¶ 46 It is the State's burden to prove every element of the offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When reviewing the sufficiency of the evidence, we must ask if, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. We will not substitute our judgment for that of the trier of fact in assessing witness credibility or assigning weight to the evidence. *Siguenza-Brito*, 235 Ill. 2d at 224-25.

¶ 47 Defendant argues that, due to inconsistencies in G.E.'s testimony and out-of-court statements, the State was unable to prove that defendant committed an act of contact, however slight, between his penis and G.E.'s buttocks. Defendant also argues that, even if defendant committed the act of contact, the State failed to prove that the contact was for the purpose of sexual gratification. We address these arguments in turn.

¶ 48 In addition to the inconsistencies addressed in the prior section—skin contact, frequency, and physical pain—defendant also points to G.E.'s trial testimony that defendant touched her breast. Defendant further claims that G.E. is generally unreliable, as demonstrated by her tendency to answer "I don't know" to basic questions and her admission that she did not tell Berg the truth regarding frequency.

¶ 49 We revisit our earlier discussion on certain inconsistencies, this time in light of G.E.'s trial testimony. As to skin contact, the court reasonably determined that there was skin contact. Again,

when asked a direct question, G.E. consistently maintained that defendant touched her on the skin. She later explained at trial that the question, "what happened to your clothes?," confused her. As to frequency, G.E. explained at trial that she did not tell Berg the whole truth. She did not feel as comfortable speaking with Berg and her father as she felt speaking with her mother. Four years later, she was able to tell Pohlman, another female, that the version of events she told her mother was the truth: defendant touched her more than once. As to whether defendant hurt her, G.E. explained at trial that she meant that defendant hurt her "like sexually wise." G.E. agreed that defendant did not cause her to bleed or have trouble going to the bathroom. G.E. also stated that defendant did not place his penis in the part of the buttocks that expelled waste, *i.e.*, the anus. The question of physical pain most directly informed the anal-penetration charge, and, as stated, defendant was acquitted of that charge. Finally, as to whether defendant touched G.E. anywhere other than her buttocks, G.E. testified at trial that defendant "*kind of* touched me *by* my boob." (Emphasis added.) Later, during cross-examination, G.E. testified that defendant did not touch her on the front of her body. Admittedly, this is an inconsistency, but not a sharp one. A child might not use the words "intentional" or "incidental," but a child may testify to facts that support the inference of one type of touch over the other. G.E. repeatedly stated that defendant touched her buttocks, and he pulled down her pants when doing so. There, she described an intentional touch. G.E. once stated that defendant "kind of" touched her "by" her boob. There, she described an incidental touch. G.E. was, arguably, consistent in stating that defendant intentionally touched only her buttocks.

¶ 50    Defendant complains that G.E. is generally unreliable. Indeed, G.E. answered "I don't know" to basic questions. She also admitted that she did not tell Berg the whole truth. Contrary to defendant's position, however, and viewing the evidence in a light favorable to the State, this

does not make G.E. a liar. G.E. was able to explain certain inconsistencies, and she did provide a consistent account of other key details. G.E. consistently maintained that defendant touched his penis to her bare bottom, that defendant did not talk during the incident, that the incident occurred in defendant's bedroom at her grandmother's house, and that M.B. was in the room. The trial court may have reasonably determined that G.E. was, overall, credible. The court acknowledged weaknesses in G.E.'s testimony: "There is no question that there are some issues with *** [G.E.'s testimony]." However, again, the court acquitted defendant of certain charges. G.E. "didn't think" defendant "did anything else" to her buttocks, and the court acquitted defendant of count IV (mouth-to-buttocks contact). G.E. "didn't think" defendant placed his penis in the part of her buttocks that expelled waste, and the court acquitted defendant of count II (anal penetration). Nevertheless, after observing G.E.'s demeanor and listening to the whole of her testimony, it believed her fundamental assertion that, on at least one occasion, defendant touched his penis to her bare bottom. "I find beyond a reasonable doubt that [an] incident occurred between the penis of the defendant and the buttocks area of the minor." We defer to the trial court's credibility determination.

¶ 51    We next address whether the State proved that defendant acted for the purpose of sexual gratification. That a defendant acted for the purpose of sexual gratification may be inferred from the evidence. *In re Matthew K.*, 355 Ill. App. 3d 652, 655 (2005). When the defendant is an adult, it may be easier to infer that certain types of contact to a person's private areas were made for the purpose of sexual gratification. *Id*.

¶ 52    Here, G.E.'s testimony, which a rationale trier of fact could have believed, showed that defendant, a 26-year-old man, initiated an intentional, non-incidental contact between his bare penis and the bare bottom of an eight-year-old child when no other adults were present. There is

no proper purpose for such contact. The only reasonable inference was that defendant initiated the contact for the purpose of sexual gratification. As the court stated: "I can't think of any other reason why an adult male would place his penis on the buttocks of a minor [eight] years old except for his sexual arousal."

¶ 53                                    C. Double Jeopardy

¶ 54    Defendant challenges the sufficiency of the indictment. Defendant focuses only on the indictment for counts I and III, each of which alleged predatory criminal sexual assault of a child. Again, defendant was convicted of both of those counts, and count III merged into count I. The sufficiency of the charging instrument is a question of law to be reviewed *de novo*. *People v. Smith*, 259 Ill. App. 3d 492, 495 (1994).

¶ 55    Specifically, defendant argues that the indictment did not meet the requirements of section 116-2(c) of the Code, in that it did not bar a future prosecution arising out of the same conduct. Section 116-2(c) provides:

"Motion in arrest of judgment. (a) A written motion in arrest of judgment shall be filed by the defendant within 30 days following the entry of a verdict or finding of guilty. Reasonable notice of the motion shall be served upon the State.

    (b) The court shall grant the motion when:

        (1) The indictment, information or complaint does not charge an offense, or

        (2) The court is without jurisdiction of the cause.

    (c) A motion in arrest of judgment attacking the indictment, information, or complaint on the ground that it does not charge an offense shall be denied if the indictment, information or complaint apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and *allow pleading a*

> *resulting conviction as a bar to future prosecution out of the same conduct.*"
>
> (Emphasis added.) 725 ILCS 5/116-2 (West 2014)).

Defendant concedes that the indictment described the act or acts alleged to have been committed by defendant with sufficient specificity to prepare a defense. Defendant argues, however, that the indictment was insufficient to guarantee that a conviction resulting from said indictment would bar a future prosecution arising out of the same conduct.

¶ 56    Defendant's argument is unclear. He seems to contend that, because the indictment contained a date range (April 1, 2014, to June 12, 2014), and, because G.E. testified that defendant committed multiple acts during that period, defendant could, in the future, be charged with additional offenses. He also seems to imply that, because the trial court found that the contact happened at least once but did not rule out the possibility that the contact happened more than once, defendant is subject to be re-tried for a charge of penis-to-buttocks contact occurring between April 1, 2014, and June 12, 2014.

¶ 57    We reject these contentions. The State may provide a date range, rather than an exact date, in an indictment for a child sex offense. See, *e.g.*, *People v. Albarron*, 2018 IL App (1st) 151508, ¶ 22 (five-year range). That the State here provided a date range, and a narrow one at that, is of no import. Also, a defendant may cite to the record in a prior prosecution to protect himself from being placed in double jeopardy. *People v. Stephenson*, 2016 IL App (1st) 142031, ¶ 23.

¶ 58    Here, were the State to attempt to re-prosecute defendant for acts arising out of the same conduct, he could easily point to the record in the instant case to protect himself from being placed in double jeopardy. The court here acknowledged the possibility that the penis-to-buttocks contact happened more than once. It found, however, that, regardless of whether the contact happened once or more than once, defendant was guilty of *at least one* act of penis-to-buttocks contact (and

- 22 -

was acquitted of any and all acts of anal penetration and mouth-to-buttocks contact) during the stated period. Defendant cannot be re-tried for alleged misconduct arising out of this act, because, as any review of the record would show, his conviction already encompasses any and all such contact occurring during the stated period.

¶ 59    Defendant's reliance on *Hughes*, 229 Ill. App. 3d at 474, is misplaced. The defendant in that case was found guilty of obstructing a peace officer. The court determined that the information did not apprise the defendant of the precise offense charged—an oversight that is not at issue in the current case. *Id*. The court also determined, without much discussion, that it was not clear from the record—which was devoid of transcripts from the trial—whether a conviction based on the information would bar a future prosecution arising out of the same conduct. *Id*. The instant case does not involve a failure to apprise the defendant of the precise offense charged. Also, the record in the instant case, which does contain the trial transcripts (albeit not the second section 115-10 hearing transcripts), establishes that a conviction based on the indictment would bar a future prosecution. *Hughes* is simply not analogous to the instant case.

¶ 60    As we have already rejected defendant's argument, we will not address the State's point that, should it attempt to charge defendant for acts of sexual misconduct occurring during the stated period, it would have a difficult time meeting joinder requirements.

¶ 61                                    III. CONCLUSION

¶ 62    For the reasons stated, we affirm the trial court's judgment.

¶ 63    Affirmed.